IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

| | |
|---|---|
| MARIA ROMERO DE LOPEZ,<br>Individually and on Behalf of<br>Others Similarly Situated | PLAINTIFF |
| v.         Case No. 5:13-CV-05272 | |
| OZARK MOUNTAIN POULTRY, INC.,<br>d/b/a FORESTER FARMER'S MARKET,<br>FORESTER FARMERS MARKET,<br>FORESTER FARMERS' MARKET, and<br>OMP; and EDWARD O. FRYAR, JR. | DEFENDANTS |

## MEMORANDUM OPINION AND ORDER

Now pending before the Court are the parties' Joint Motion for Approval of Settlement (Doc. 106), brief in support (Doc. 105), and Stipulation and Settlement Agreement (Doc. 105-1).  Preliminary approval of the proposed settlement was granted orally at an in-court hearing on August 21, 2015, at which attorneys for both parties were present.  On August 27, 2015, the Court memorialized its findings on preliminary settlement approval in a written Order (Doc. 102), which certified a collective action for settlement purposes only pursuant to the Fair Labor Standards Act ("FLSA").  Plaintiff Maria Romero de Lopez was appointed representative of a class consisting of herself and other current and former employees of Defendants Ozark Mountain Poultry, Inc., d/b/a Forester Farmer's Market, Forester Farmers Market, Forester Farmers' Market, and OMP; and Edward O. Fryar, Jr. (collectively, "Ozark Mountain"), all of whom were employed as hourly poultry production plant employees at Ozark Mountain's Rogers facility during the statutory period, and who were not fully compensated for all donning and doffing time, walking time, and lunch time.

In addition to ruling on the Joint Motion for Approval of Settlement, the Court will also consider and rule on de Lopez's Motion for Attorney Fees (Doc. 98) and brief in support (Doc. 99), to which Ozark Mountain filed a Response in Opposition (Doc. 101), de Lopez filed a Reply (Doc. 103), and Ozark Mountain filed a Sur-Reply (Doc. 108).

## I.  BACKGROUND

The collective action Complaint (Doc. 1) was filed by de Lopez on November 22, 2013, alleging Ozark Mountain's failure to pay overtime compensation to herself and a class of hourly production workers.  De Lopez claimed that Ozark Mountain failed to pay the class overtime compensation for donning and doffing clothing and personal protective equipment before, during, and after each shift and before and after 30-minute lunch breaks.  Ozark Mountain denied having committed any FLSA violations.

On November 25, 2013, de Lopez filed a Motion for Conditional Certification, Equitable Tolling, Disclosure of Contact Information for Potential Opt-In Plaintiffs, and for Court Approval of Proposed Notices (Doc. 5).  The Motion was opposed by Ozark Mountain, and the Court held a hearing on conditional certification on April 24, 2014.  Thereafter, the Court issued an Order (Doc. 34) granting in part and denying in part the Motion for Conditional Certification, in that a collective action was conditionally certified, but the proposed notice forms were rejected.  Instead, the Court directed counsel for both parties to submit an agreed set of notice documents for Court approval, which the parties did on July 3, 2014 (Doc. 37).

On July 16, 2014, class counsel issued the Court-approved notice documents, and by the time the opt-in period closed, 99 individuals had joined the collective action.  A day after the opt-in period expired, two more individuals opted in.  In total, 101 individuals filed

consent-to-join forms. Of those 101 individuals, only one claim was barred by the statute of limitations.

In early December of 2014, the parties entered into a confidential mediation agreement and engaged a professional mediator's services. On January 14, 2015, the parties' mediation efforts culminated in a settlement, which ultimately led to the Stipulation and Settlement Agreement (Doc. 105-1) now before the Court. Class counsel aver that they have conducted a thorough investigation of the claims and believe that the terms of the Stipulation and Settlement Agreement are fair, reasonable, and in the best interests of the class.

The Stipulation and Settlement Agreement provides for a maximum gross settlement amount of $90,000.00, from which will be subtracted: (1) final payments to each class member;[1] (2) class counsel's fees and costs; (3) all mediation fees, costs, and travel-related expenses incurred by the professional mediator; and (4) Ozark Mountain's share of taxes owed on final settlement payments made to the class. If any of the $90,000.00 settlement fund remains after the class members, class counsel, the mediator, and Ozark Mountain's share of the taxes have all been paid, the balance of the fund will revert to Ozark Mountain.

The Court will now analyze whether to grant final approval to the settlement and award class counsel the fees and costs they request.

## II. DISCUSSION

### A. Final Approval of FLSA Settlement

---

[1] A spreadsheet calculating the individual amounts to be paid to de Lopez and to each class member appears at Doc. 105-1, pp. 36-38.

Based on the Court's careful review of the Stipulation and Settlement Agreement, the following findings are supported:

1. De Lopez and Ozark Mountain engaged in a bona fide dispute that was contested, litigated, and ultimately settled as a result of arms-length negotiations, including a structured mediation process.

2. The Stipulation and Settlement Agreement is fair, just, reasonable, and adequate to the class and thus merits final approval.

3. The notice and opt-in procedures approved by the Court and distributed to the class comported with due process and appropriately informed the class as to the claims at issue.

4. Class counsel fairly and adequately protected the interests of the class.

5. As a condition of the settlement, de Lopez must execute a Release Form (Doc. 105-1, pp. 39-44), and each individual class member must complete and timely return a Substitute W-9 Form (Doc. 105-1, p. 51) for receipt by class counsel on or before the "Bar Date," which is defined in the Stipulation and Settlement Agreement as "the date that is forty-five (45) calendar days after the date on which CLASS COUNSEL postmarks the SETTLEMENT NOTICE and SUBSTITUTE W-9 FORM to members of the SETTLEMENT CLASS and CLASS COUNSEL postmarks the RELEASE FORM to PLAINTIFF." (Doc. 105-1, p. 8).

6. If a class member fails to timely complete a Substitute W-9 Form, that class member will only receive 50% of his or her potential settlement payment, with the remaining 50% reverting to Ozark Mountain.

7. The cumulative settlement amount to be paid to de Lopez and the 100 other members of the class totals $13,223.90. The individual payments, calculated by a methodology agreed to by counsel, represent full reimbursement of all overtime compensation owed to each class member. The payment amounts set forth in Doc. 105-1, pp. 36-38, are, therefore, approved by the Court.

8. The Court also gives final approval to the proposed Notice of Settlement and Claims Procedure (Doc. 105-1, pp. 45-50) and finds that it may be distributed to the settlement class, as contemplated by the parties' Stipulation and Settlement Agreement.

Accordingly, the Joint Motion for Approval of Settlement (Doc. 106) is **GRANTED FINAL APPROVAL** by the Court.

### B. Motion for Attorney Fees and Costs

Having evaluated class counsel's Motion for Attorney Fees and Costs (Doc. 98) and Ozark Mountain's opposition, the Court has determined a reasonable award of fees and costs in this matter.

The Stipulation and Settlement Agreement contemplates Ozark Mountain setting aside an all-in settlement figure of $90,000.00, from which the parties agree a maximum total of $13,223.90 should be paid to Plaintiff de Lopez and the 100 other opt-in class members, and $6,210.11 should be paid to Mediator Frank Hamlin.[2] The parties' Brief in

---

[2] The Court understands from its discussions on the record with the parties that Mr. Hamlin's full fees and costs may have been paid already by Ozark Mountain. If so, it follows that Ozark Mountain would be entitled to reimburse itself from the settlement fund for this payment.

Support of Joint Motion for Approval of Settlement (Doc. 105) states explicitly with regard to the payment of class counsel's attorney fees and costs that such is "to be decided by the Court but in an amount not to exceed $68,988.12, which is part of the Parties' negotiated settlement." *Id.* at p. 8.[3]

Class counsel in their Brief in Support of Plaintiff's Motion for Attorney Fees and Costs argue in favor of an attorney fee award of $130,605.50 and an award of costs of $18,089.66. The request for costs appears to be well documented and will be awarded in full. The request for fees is a thornier issue. Class counsel concede that the terms of the Stipulation and Settlement Agreement—which they ask the Court to approve—sets a cap on their fees. *See* Doc. 99, pp. 1-2 ("By agreement of the Parties, the fee awarded by the Court will be reduced if necessary so that the total settlement amount does not exceed the amount specified in the Parties' settlement agreement."). Nonetheless, class counsel attempt to justify a fee award well above the cap by presenting a number of itemized billing statements.

In assessing the reasonableness of class counsel's request for attorney fees, the Court has considered the following factors set forth by the Arkansas Supreme Court in *Chrisco v. Sun Industries, Inc.*, 304 Ark. 227, 229-30 (1990), and cited to with approval by the Eighth Circuit, *see All-Ways Logistics, Inc. v. USA Truck, Inc.*, 583 F.3d 511, 521 (8th

---

[3] It is not immediately clear to the Court why the agreed-to cap on attorney fees and costs is $68,988.12. If the total settlement fund is $90,000, and $13,223.90 in class payments as well as $6,210.11 in mediation costs are subtracted from the total, the remaining balance is $70,565.99, not $68,988.12. The Court surmises that the parties estimate Ozark Mountain's share of the taxes on class payments to be $1,577.87, and this figure has also been subtracted from the total settlement amount in order to arrive at the cap of $68,988.12.

Cir. 2009): the amount of time counsel invested in the lawsuit; the appropriateness of counsel's rates, given the experience and ability of the attorneys; the time and labor required to perform the legal services properly; the amount potentially at issue in the case; the results obtained; the novelty and difficulty of the issues involved; and the prevailing rate customarily charged in this area for similar legal services.

Class counsel correctly observe that this case was vigorously litigated at all phases, from the collective action certification phase, which was fully briefed and resulted in a lengthy in-court hearing; to negotiating the content of notice forms for submission to the Court; to distributing the notice by mail to 2,183 potential class members; to mediating the case to arrive at an eventual settlement; to participating in both telephonic and in-court hearings on the subject of preliminary settlement approval; and, finally, to fully briefing the Motion for Attorney Fees now before the Court. Class counsel's time investment will not end once this Order is entered, however, as the Stipulation and Settlement Agreement states that class counsel will administer the claims distribution process, including sending the Notice and Substitute W-9 Forms to the class members, as well as disbursing all settlement checks. Under these circumstances, the Court must conclude that class counsel reasonably expended a not-insignificant number of hours in obtaining this settlement for de Lopez and the class.

Next, although class counsel incurred risk in taking this matter on a contingency-fee basis, the issues in the case, particularly with respect to conditional certification, were not particularly complex. Nevertheless, it appears that the parties' final push to submit a finished settlement agreement to the Court was a hard-fought, unnecessarily time-consuming endeavor, given the fact that the parties' preliminary agreement made at the

time of mediation set forth all material terms, including: the all-in $90,000.00 settlement amount; the methodology for calculating damages for the class members; the types of payments that would be deducted from the final settlement amount; certain non-disparagement, confidentiality, and denial of liability clauses; and the rather detailed process by which settlement payments would be treated for tax purposes.

When it came time to draft a final settlement agreement, Ozark Mountain observed that there were some terms on which the parties could not agree. At some point, Ozark Mountain went so far as to characterize the preliminary agreement, as memorialized in a document signed by the parties at mediation, as merely a "tentative settlement" that was so tenuous there was "nothing [for the Court] to enforce." (Doc. 93, pp. 3 ,13). The Court, wishing to assist the parties in resolving their impasse and reducing the material settlement terms in the preliminary agreement to a final agreement, conducted a telephonic hearing on July 1, 2015. After listening to the parties' concerns, the Court explained that, in its view, the preliminary settlement agreement contained sufficient material terms to constitute a settlement, evidenced a meeting of the minds, and was enforceable. Given the Court's observations, the parties were instructed to draft a final agreement over the next 30 days. Unfortunately, on the eve of the deadline to submit the final agreement, Ozark Mountain advised that no agreement could be reached. The Court was then left with no option but to schedule an in-court hearing on the matter, which took place on August 21, 2015. At the conclusion of the in-court hearing, the Court made a formal ruling that the preliminary settlement agreement was unambiguous and binding on the parties as to all essential terms contained therein. It also became clear to the Court at the time of the hearing that the parties' settlement was neither complex nor novel, and if blame were to be apportioned

between the parties regarding their apparent inability to draft a final settlement agreement, the larger share would be borne by Ozark Mountain.

As for the results obtained by class counsel through the settlement, it is apparent that only 100 out of more than 2,183 individuals eligible to opt into the collective action actually joined the class. This is a participation rate of less than 5%. Further, it appears each opt-in class member will ultimately receive a fairly *de minimis* payment; but this is balanced against the fact that the class members' statutory rights under the FLSA were vindicated in the course of this lawsuit. Finally, it bears mentioning that class counsel now claim a fee award that is approximately ten times the amount that the class will receive collectively. This fact gives the Court some pause, as it raises questions as to how the value derived by the class in the lawsuit compares to the value their attorneys expect to derive.

Turning to counsel's fee request, it is reasonable for them to claim an amount that is somewhat higher than the Court would ordinarily expect for this type of case, which was resolved at its early stages prior to the close of discovery. That said, however, it is completely unreasonable for class counsel to contend it was necessary for more than six attorneys and an unspecified number of legal assistants to invest a total of 634.2 hours and $130,605.50 in fees litigating this matter.[4] In reviewing class counsel's time records, it is clear the case was overstaffed and quite aggressively billed. Still, class counsel are

---

[4] Indeed, the relative lack of complexity of this case may be inferred in part by the fact that lead attorney Mr. Sanford did not attend the day-long mediation on January 14, 2015, as indicated by his billing records. Instead, Ms. Hurst and Mr. Rauls attended in his place. *See* Doc. 98-1, p. 78. Perhaps Mr. Sanford's absence may help explain why so much time and expense was invested by the parties after the mediation to interpret the preliminary settlement agreement's terms.

entitled to a reasonable amount of fees and costs, and the Court will analyze their claim according to the *Chrisco* factors.

As per the parties' Stipulation and Settlement Agreement, the payment of all settlement amounts, including attorney fees and costs, cannot exceed $90,000.00. Accordingly, the award of attorney fees and costs made herein must be discounted to the amount of the remaining balance of the total settlement fund after the payment of individual awards to de Lopez and the other class members, mediation fees and costs to the mediator, and Ozark Mountain's taxes owed on the class payments, if the remaining balance of the settlement fund at that point is less than $68,988.12.

Beginning with the issue of class counsel and their staff's background, experience, and abilities in relation to the hourly rates they charge and the prevailing rate for similar legal work in Northwest Arkansas, the Court does not find sufficient evidence to support attorney Josh Sanford's hourly rate of $290.00. The same is true for rates proposed by attorneys Vanessa Kinney, Delena Hurst, Steve Rauls, Sonia Rios, and Cheslee Mahan.[5] Plaintiffs also propose hourly rates for legal assistants of $60.00 per hour, which the Court finds excessive, given the mostly administrative nature of the tasks these assistants performed.

---

[5] Class counsel cite to one case from this district and three cases from the Eastern District of Arkansas to support their contention that their hourly rates are in line with those charged in this area for similar legal services. The Court finds counsel's evidence unpersuasive. Moreover, there are no affidavits in the case file from other attorneys who practice in this district and are familiar with the rates charged for legal work in Northwest Arkansas. The Court therefore relies on its own knowledge and experience as to the prevailing rates in this district in making its findings.

Nonetheless, even if the Court were to reduce the hourly rates by as much as 25-30%, and further discount the overall amount of time billed, a reasonable fee would still be slightly more than the maximum remaining amount available after the subtraction of costs. Accordingly, the Court, with some reservation, finds the sum of $50,898.46 to be a reasonable attorney fee award and therefore will approve the same.

### III.  CONCLUSION

**IT IS HEREBY ORDERED** that the parties' Joint Motion for Approval of Settlement (Doc. 106) is **GRANTED**, and the Court gives **FINAL APPROVAL** to the parties' settlement.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Attorney Fees (Doc. 98) is **GRANTED IN PART AND DENIED IN PART** as follows: class counsel are awarded a total of $50,898.46 in attorney fees and $18,089.66 in costs. These sums are payable according to the procedure set forth in the Stipulation and Settlement Agreement.

**IT IS SO ORDERED** this 25th day of September, 2015.


       /s/ Timothy L. Brooks
       TIMOTHY L. BROOKS
       UNITED STATES DISTRICT JUDGE